Tukuey, J.
delivered the opinion of the court.
This is an action of trespass, vi et armis, brought by the defen-dantin error, to recover damages against the plaintiffs in error, under the following circumstances: Perry was the owner of a negr.o man slave, David; a controversy of an unimportant character arose between him and Asa Johnson, one of the plaintiffs in error, the result of which was, that the plaintiffs in error undertook to inflict personal chastisement upon him; he escaped from them, and in flight incautiously jumped or fell from a small -precipice of a creek, and fractured one of his legs, by which he has been materially damaged. There was judgment for the defendant in error, for the reversal of which, several causes are assigned.
1st. It is contended that the action is misconceived; that it should have been trespass on the case, and not trespass vi et armis, because it is said, that the injury did not proceed directly from any act done by the plaintiffs in error, but was merely consequential. It is often a question of great difficulty to determine whether the injury be direct or consequential, but we think it is not so in this case; the injury is always direct when a wrong act is done, and the consequence is such as might reasonably follow, as if a man strike a horse, upon which another is sitting, by which he is thrown and injured, the action is trespass, not because it was a necessary consequence that he should be thrown, or that it was designed that he should be, but because it is an event which may reasonably follow, and in direct connection with the act done. So in the case of Caldwell in 7th Yer. 38, the defendant set his dogs upon the mare of the plaintiff, the consequence of which was, that in the fright produced thereby, she ran up on a stake and was killed; this was held to be an immediate injury, resulting from the act of the defendant, yet it did not necessarily follow in a concatenation that this must have been the result; she might have run clear of the stake, and received no injury, and it is certain that the defendant could not have anticipated that she would have run upon the stake, as she had every other point of the compass to run to. Then, to apply these principles to the case under consideration: the plaintiffs in error were illegally engaged in chastising the servant of the defen *572 dant; he broke from them and fled; in his flight he incautiously jumped.or fell from the precipice, and received the injury complained of. Now it was no more a necessary consequence, that he should have fled to the precipice, than that the mare should have run upon the stake, but just as much so, and in as much as it did take place, and that too in consequence of the illegal act of the plaintiffs in error, the injury sustained must be held tobe the direct consequence of the wrong done.
2nd. It is contended that the court erred in not charging the jury that the defendant in error was only entitled to recover for such cause of action as existed at the time of the issuance of the writ, and that therefore they could not give damages for any loss of service to the master, nor for medical bills paid by him for attention to the wound of his servant, which accrued after the issuance of the writ. We think that damages for the loss of service are tobe given, where the injury has been temporary, and that no more can be given than accrues before the commencement of the action; that where the injury is permanent and the damages are for the deteriorated value by reason of the injury, that .then, damages are to be in lieu of the loss of service, as being a full compensation for the wrong done, as in the case referred to from 7th Yerg. Where the property was actually destroyed, the damages would be the value of the property, and not for any loss of service in the cultivation of a crop or otherwise; so in this case, if the negro had been killed, the damages would have been his actual value; if-he-has been permanently injured, and the jury, in the assessment of .damages, have taken as the criterion, the difference between the actual value of the slave without the injury and his present value with it, no damages ought to be given for his loss of service, because the difference of value is a plenary satisfaction for the wrong .done, placing the owner in statu quo, unless under all the circumstances, they might think proper, as a punishment, to give s,mart money.
We think further, that no damages which accrue after the com'mencement of the suit can be recovered,.except such as are the immediate consequence of the trespass, as if a man’s property has been .injured,, and after the commencement of the suit, it dies, proof of the fact may be received to aggravate the damages; so if the ■injury proves to be greater by the lapse of time than it was at the •commencementof the suit, the same may be done. This princi- *573 pie excludes all collateral damages, arising after the commence* ment of the suit and of course medical bills.
Let us now see how this case stands under these principles. Proof was heard, showing the nature of the injury, a little conflicting as to what may be the permanent result, but not sufficiently so as to have produced a reversal of the judgment. Proof was also heard showing loss of service, and a liability created for medical services, accruing after the commencement of the suit. Upon this the court charged the jury, “that if they found for the plaintiff, the maximum of damages should be the injury sustained; that they were not restrained to the immediate deterioration of value, but might include all damages resulting as a necessary consequence of the injury, such as reasonable surgeon’s fees, though paid subsequent to the institution of the action.”
This charge, it will be seen, conflicts with the position assumed by us in this case, in maintaining that the surgeon’s bill is a necessary consequence of the wrong, when we hold it to be merely a collateral consequence. The charge also was calculated to mislead the jury, and no doubt did, by leaving the impression that medical bills contracted after the commencement of the suit might be taken into consideration in estimating the damages; and perhaps, so the judge meant, although he has only said in his charge, “such as were paid subsequent to th£ institution of the suit.” We therefore think the second point is in favor of the plaintiffs in error.
3d. It is contended that the court should have charged the jury, if the injury was neither the probable nor the necessary consequence of the act done, but the result of inevitable accident, that the plaintiffs in error were not liable. As an abstract proposition, this is true, but altogether out of the facts of the case, and therefore not necessary to be involved in its discussion. In the reasoning upon the first point, we have shown that the injury received, was a direct result from the wrong done, and it therefore could not have been the result of accident.
4th. It is contended that the court erred in not granting a new trial, because of excessive damages. It is not important to investigate this principle for this case, as it is reversed upon another point, but we will merely say, we would not have given a new trial for that cause.
5th. It was contended that the misbehavior of the jury furnishes a good cause for a new trial. The affidavit of one of the *574 jurors shows that upon their retirement, each of the jurors wrote upon separate pieces of paper the amount of damages he was willing to allow, which was put into a hat and drawn out, the aggregate of which, divided by. twelve, amounted to between $730 and $760 dollars. This result was not satisfactory to the jury, and upon further deliberation the amount of damages was fixed at $800. This, it is said, vitiates the verdict, and the case of Elledge vs. Todd, 1st Humphreys, 43, is cited as authority. That case does not sustain the position. It determines that if a juiy, for the purpose of ascertaining what amount of damages shall be assessed, agree among themselves that each member of the body shall set down the amount he is willing to allow, and the result shall be the verdict and make it so, the verdict is vitiated, and a new trial will be granted: that is not this case. There was here no agreement to make the result the verdict; in fact, a larger amount was given. There is no cause for a new trial.
Upon the whole, we reverse the judgment,and remand the case for a new trial, in accordance with the principles, here laid down.